*E-FILED 12-19-2011*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RAJ KUMARI SHARMA and KARTARI LAL SHARMA,<br><br>　　　　　　Plaintiffs,<br>　v.<br><br>WACHOVIA, DOES 1-10, inclusive,<br><br>　　　　　　Defendants. | No. C10-04548 HRL<br><br>**ORDER (1) GRANTING DEFENDANT'S MOTION TO DISMISS; AND (2) DENYING AS MOOT DEFENDANT'S MOTION TO STRIKE**<br><br>[Re: Docket Nos. 51 and 52] |

　　　Plaintiffs Raj Kumari Sharma and Kartari Lal Sharma sue for damages allegedly arising out of the refinancing of their home mortgage and the subsequent non-judicial foreclosure sale of the subject property.[1]  Plaintiffs say that they believed they were obtaining a fixed rate loan, but actually got an adjustable rate mortgage that they could not afford.  According to their complaint, plaintiff Raj Kumari Sharma's loss of employment in October 2008 created "extreme economic hardship," and they contacted defendant Wachovia in December 2008 about obtaining a loan modification.  (Second Amended Complaint (SAC) ¶ 17).  The Sharmas allege that, in January 2009, Wachovia's agents advised them "to stop making their mortgage payments because [plaintiffs] did qualify for the 'Wachovia's Assistance Program,' which subsequently would lead to the approval of a loan modification."  (Id. ¶ 18).  Plaintiffs say that, based on those representations, they stopped making their mortgage payments in January 2009.

---

[1]　All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned.  28 U.S.C. § 636(c); FED. R. CIV. P. 73.

1  The following month, plaintiffs sent a letter to defendant explaining their financial situation and
2  requesting that their mortgage payments be deferred for three months.  (SAC, Ex. 2).  Then, in
3  March 2009, Wachovia reportedly contacted plaintiffs and told them that "they were approved
4  for an initial two month trial payment plan in the amount of $2,007.22 for each month to see
5  whether they could make these payments in order to obtain a permanent loan modification."
6  (Id. ¶ 21).  The complaint further alleges that plaintiffs were advised twice by phone to make
7  these two trial payments.  (Id. ¶ 22).  Meanwhile, defendant reportedly requested other
8  documentation from plaintiffs.  (Id. ¶ 28).  Plaintiffs claim that they made the trial payments;
9  that they sent all documentation requested by defendant; that Wachovia promised not to
10 foreclose on the property while their loan modification was being processed; and that Wachovia
11 nonetheless foreclosed on the property in February 2010 and sold it without contacting them
12 about a loan modification.  (Id. ¶¶ 23-29).

13      The Sharmas filed suit in Santa Clara County Superior Court, asserting four state law
14 claims for relief:   (1) breach of the duty of good faith and fair dealing; (2) unfair business
15 practices (Cal. Bus. & Prof. Code § 17200); (3) misrepresentation and fraud; and (4) unjust
16 enrichment.  Wachovia removed the matter here, asserting diversity jurisdiction.

17      Wachovia subsequently moved to dismiss the complaint.  In response, plaintiffs filed a
18 First Amended Complaint (FAC) as of right.  The FAC asserted the following five claims for
19 relief:   (1) breach of the duty of good faith and fair dealing; (2) promissory estoppel; (3) unfair
20 business dealings (Cal. Bus. & Prof. Code §§ 17200) (4) fraudulent business practices (Cal.
21 Bus. & Prof. Code § 17500); and (5) unjust enrichment.

22      The court granted Wachovia's Fed. R. Civ. P. 12(b)(6) motion to dismiss the FAC, with
23 leave to amend.  To the extent that plaintiffs' claims were based on allegations that defendant
24 failed to use proper care in communicating with plaintiffs, did not adequately disclose interest
25 rates and other loan terms, or failed to provide adequate notice of various rights and procedures
26 during the foreclosure process, the court concluded that their claims are preempted by the Home
27 Owners Loan Act (HOLA), 12 U.S.C. § 1461, et seq.  Even if some portion of plaintiffs' claims
28

2

were not preempted, the court found that the FAC failed to plead sufficient facts to state a claim for relief.

Plaintiffs filed a Second Amended Complaint (SAC) that drops the claim for breach of the duty of good faith and fair dealing and asserts only the following four claims for relief: (1) promissory estoppel; (2) violation of California Business & Professions Code, Section 17200; (3) violation of California Business & Professions Code, Section 17500; and (4) unjust enrichment. The gravamen of the SAC is that defendant allegedly breached purported promises concerning a loan modification.

Wachovia now moves to dismiss the SAC pursuant to Fed. R. Civ. P. 12(b)(6), arguing that plaintiffs' claims are preempted by HOLA and that the SAC still fails, in any event, to state a claim for relief. Wachovia also moves to strike portions of the amended pleading pursuant to Fed. R. Civ. P. 12(f). Plaintiffs oppose the motion to dismiss. They have not submitted any opposition to the separate motion to strike. The motions are deemed suitable for determination without oral argument, and the December 20, 2011 hearing is vacated. Civ. L.R. 7-1(b). Upon consideration of the moving and responding papers, as well as documents appended to the complaint and the loan documents and other related records submitted by defendant for judicial notice, this court grants the motion to dismiss and denies as moot the motion to strike.

## LEGAL STANDARD

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims in the complaint. "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In such a motion, all material allegations in the complaint must be taken as true and construed in the light most favorable to the claimant. See id. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Morever, "the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994).

1    Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the
2  claim showing that the pleader is entitled to relief." This means that the "[f]actual allegations
3  must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v.
4  Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted)
5  However, only plausible claims for relief will survive a motion to dismiss. Iqbal, 129 S.Ct. at
6  1950, 173 L.Ed.2d 868 (2009). A claim is plausible if its factual content "allows the court to
7  draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at
8  1940. A plaintiff does not have to provide detailed facts, but the pleading must include "more
9  than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 1949.

10    Documents appended to the complaint or which properly are the subject of judicial
11  notice may be considered along with the complaint when deciding a Fed. R. Civ. P. 12(b)(6)
12  motion. See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19
13  (9th Cir. 1990); MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

14    While leave to amend generally is granted liberally, the court has discretion to dismiss a
15  claim without leave to amend if amendment would be futile. Rivera v. BAC Home Loans
16  Servicing, L.P., 756 F. Supp.2d 1193, 1997 (N.D. Cal. 2010) (citing Dumas v. Kipp, 90 F.3d
17  386, 393 (9th Cir. 1996)).

18                                    DISCUSSION
19  A.    Home Owners' Loan Act (HOLA) Preemption

20    Plaintiffs do not dispute that Wachovia (successor to World Savings Bank and now part
21  of Wells Fargo Bank, N.A.) was a federal savings bank regulated by the Office of Thrift
22  Supervision (OTS) under HOLA, 12 U.S.C. § 1461, et seq. Defendant once again argues that
23  HOLA therefore preempts all of plaintiffs' claims. See, e.g., Khan v. World Savings Bank,
24  FSB, No. 10-cv-04305-LHK, 2011 WL 133030 at *2 (N.D. Cal., Jan. 14, 2011) ("[A]lthough
25  Wells Fargo itself is not subject to HOLA and OTS regulations, HOLA nonetheless applies to
26  this action because Plaintiff's loan originated with a federal savings bank and was therefore
27  subject to the requirements set forth in HOLA and OTS regulations.").
28

4

The Ninth Circuit has "described HOLA and its following agency regulations as a 'radical and comprehensive response to the inadequacies of the existing state system,' and 'so pervasive as to leave no room for state regulatory control.'" Silvas v. E*Trade Mortgage Corp., 514 F.3d 1001, 1004-05 (9th Cir. 2008) (quoting Conference of Fed. Sav. & Loan Ass'ns v. Stein, 604 F.2d 1256, 1257, 1260 (9th Cir. 1979)). The net effect is that HOLA, through the OTS, preempts the field of lending regulation of federal savings associations. Id. at 1004.

"As the principal regulator for federal savings associations, OTS promulgated a preemption regulation in 12 C.F.R. § 560.2." Id. at 1005. Section 560.2(b) lists types of state laws that are preempted, including those concerning:

> (4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
>
> (5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;
>
> * * * * *
>
> (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants; and
>
> (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages.

12 C.F.R. § 560.2(b). Section 560.2(c) provides that certain types of state law—including contract, tort, and real property law—are not preempted "to the extent that they only incidentally affect the lending operations of Federal savings associations" or are otherwise consistent with section 560.2(a). Id. § 560.2(c).

In assessing whether a state law is preempted, the court must first "'determine whether the type of law in question is listed in [section 560.2] paragraph (b)." Silvas, 514 F.3d at 1005 (quoting OTS, Final Rule, 61 Fed. Reg. 50951, 50966-67 (Sept. 30, 1996)). If it is, analysis ends and the law is preempted. Id. Here, the court focuses "not on the nature of the cause of action allegedly preempted, but rather on the 'functional effect upon lending operations of

5

1  maintaining the cause of action.'" Chang v. Wachovia Mortgage, FSB, No. C11-01951SC,
2  2011 WL 2940717 *4 (N.D. Cal., July 21, 2011) (quoting Naulty v. GreenPoint Mortgage
3  Funding, Inc., No. 09-01542, 2009 WL 2870620 at *4 (N.D. Cal., Sept. 3, 2009)); see also
4  DeLeon v. Wells Fargo Bank, N.A., No. C10-01390LHK, 2011 WL 311376 * 4 (N.D. Cal., Jan.
5  28, 2011) (same).

6  If the law is not covered by section 560.2(b), then "'the next question is whether the law
7  affects lending." Silvas, 514 F.3d at 1005 (quoting OTS, Final Rule, 61 Fed. Reg. 50951,
8  50966-67 (Sept. 30, 1996)). If so, then "'the presumption arises that the law is preempted.'" Id.
9  "This presumption can be reversed only if the law can clearly be shown to fit within the
10 confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted
11 narrowly. Any doubt should be resolved in favor of preemption.'" Id.

12 A number of courts in this district have concluded that claims of fraud and
13 misrepresentation are preempted if they are based on allegations "'related to inadequate
14 disclosure of fees, interest rates or other loan terms, [] or inadequate notice of various rights and
15 procedures during the foreclosure process.'" Ahmed v. Wells Fargo Bank & Co., C11-00436SI,
16 2011 WL 1751415 *4 (N.D. Cal., May 9, 2011) (quoting DeLeon, 2011 WL 311376 at *6); see
17 also Biggins v. Wells Fargo & Co., 266 F.R.D. 399, 417 (N.D. Cal. 2009) (distinguishing
18 between inadequate disclosures and affirmative misrepresentations); Wornum v. Aurora Loan
19 Services, Inc., No. C11-02189JCS, 2011 WL 3516055, * 6 (N.D. Cal., Aug. 11, 2011) (citing
20 cases). "On the other hand, when a claim is based on the general duty not to misrepresent
21 material facts, and when application of a state law does not regulate lending activity, district
22 courts have found that the claims are not preempted by HOLA." Wornum, 2011 WL 3516055
23 at * 6 (citing cases). This is so because "[t]he only 'requirement' these claims impose on
24 lending institutions is that they be held responsible for the statements they make to their
25 borrowers." Chang, 2011 WL 2940717 at *5. "If these causes of action were preempted,
26 federal savings associations would be free to lie to their customers with impunity." Id.

27 Here, all of plaintiffs' claims are based on affirmative statements allegedly made by
28 defendant, and reportedly relied upon by plaintiffs, concerning their qualification for a loan

6

1  modification. As such, the court concludes that the claims are not preempted. See, e.g., Chang,
2  2011 WL 2940717 at *5.

3  Defendant nevertheless contends that the SAC fails to allege sufficient facts supporting
4  a claim for relief. For the reasons stated below, the court agrees.

5  B.   Claim 1:   Promissory Estoppel

6  A claim for promissory estoppel requires: "(1) a promise that is clear and unambiguous
7  in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be
8  reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his or her
9  reliance." Boon Rawd Trading Int'l Co., Ltd. v. Paleewong Trading Co., Inc., 688 F. Supp.2d
10 940, 953 (N.D. Cal. 2010) (citing Ecology, Inc. v. State of California, 129 Cal. App.4th 887,
11 901-902, 904, 28 Cal. Rptr.3d 894 (2005)). "The purpose of this doctrine is to make a promise
12 that lacks consideration (in the usual sense of something bargained for and given in exchange)
13 binding under certain circumstances." Id. (citing Youngman v. Nevada Irrigation Dist., 70
14 Cal.2d 240, 249, 74 Cal. Rptr. 398, 449 P.2d 462 (1969)).

15 The SAC alleges that, in order to qualify for a loan modification, plaintiffs were told that
16 they must default on their monthly mortgage payments and make two trial plan payments.
17 (SAC ¶¶ 31, 34). The SAC further alleges that defendant's "promise not to foreclose while still
18 assessing Plaintiffs' loan modification was a clear and unambiguous promise." (Id. ¶ 37). As
19 currently pled, however, it is not apparent that defendant breached either of the alleged
20 promises. Contrary to plaintiff's arguments in their opposition brief, the SAC's allegations do
21 not indicate that defendant clearly and unambiguously promised to modify plaintiffs' loan on
22 the basis of their default and the trial payments alone. Inasmuch as defendant reportedly
23 continued to request additional documentation and information from plaintiffs (see, e.g., SAC
24 ¶28), the SAC's allegations suggest that default and trial payments were but two of several
25 requirements for a loan modification. While the SAC alleges that defendant foreclosed on the
26 property while plaintiffs' loan modification application was under review, plaintiffs' own
27 correspondence appended to the complaint indicates that they knew their loan modification
28 application had expired at least several months before the foreclosure took place. (SAC, Ex. 5).

7

Plaintiffs requested that their application be reinstated (see id.). But, there is nothing to suggest that their application was reinstated, much less that defendant was still reviewing it, when foreclosure occurred.

Accordingly, plaintiffs' claim for promissory estoppel is dismissed.[2] Because all of their remaining claims depend on the viability of plaintiff's promissory estoppel claim, those other claims are also dismissed. Plaintiffs will be given one more opportunity to amend their complaint if, in compliance with Fed. R. Civ. P. 11, they can truthfully allege facts supporting a plausible claim for relief.

## ORDER

Based on the foregoing, defendant's motion to dismiss the SAC is granted. Defendant's motion to strike is denied as moot. If plaintiffs choose to amend their complaint, their amended pleading shall be filed within 14 days from the date of this order.

SO ORDERED.

Dated: December 19, 2011

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

---

[2] Because the court finds dismissal appropriate on other grounds, it does not reach defendant's argument that the alleged oral promises concerning plaintiff's mortgage is subject to the statute of frauds.

8

1  5:10-cv-04548-HRL Notice has been electronically mailed to:

2  Ali Nehme    nehme29@sbcglobal.net

3  Elizabeth Christine Hehir    chehir@afrct.com, afrctecf@afrct.com, cdaniel@afrct.com, emartinez@afrct.com, rbailey@afrct.com

Frederick James Hickman    fhickman@afrct.com, AFRCTECF@afrct.com, dpandy@afrct.com, jashley@afrct.com

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.